# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CARGILL, INC., | ) | CASE NO. 1: 10 CV 1183 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| GENERAL TRUCK DRIVERS, | ) | MEMORANDUM OPINION |
| CHAUFFEURS, WAREHOUSEMEN | ) | AND ORDER |
| AND HELPERS, LOCAL UNION | ) | |
| NO. 436, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court upon Plaintiff Cargill, Inc.'s Motion to Vacate the Arbitration Award. (ECF # 1.) For the reasons set forth below, the Motion to Vacate is GRANTED.

## I. BACKGROUND

On May 26, 2010, Plaintiff Cargill, Inc. filed a Complaint and Motion to Vacate the Arbitration Award. (ECF # 1.) More specifically, Plaintiff moves this Court for an Order vacating the Opinion and Award of Arbitrator Michael Paolucci issued on April 27, 2010 in *In the Matter of Arbitration Between Cargill Salt Company and General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local Union No. 436*, FMCS. No. 090610-57546-8. (*Id*. at 1.) The grievance heard by the Arbitrator concerned whether Plaintiff had just cause to discharge maintenance mechanic employee Scott Stark, a member of Defendant General Truck Drivers, Chauffers, Warehousemen and Helpers, Local Union No. 436. (*Id.* at ¶ 14.)

Plaintiff alleges that, on March 5, 2009, Mr. Stark cut the lock off a co-worker's locker, took various personal items from the locker, and threw the remaining locker contents into the

trash. (*Id.* at ¶ 8.) The items thrown away consisted of Cargill safety equipment and other property, not belonging to Mr. Stark, that was valued at over $300. (*Id.*) Plaintiff asserts that Mr. Stark admitted to cutting off the lock, taking his co-worker's personal items, and throwing away Cargill property. (*Id.*) Plaintiff further contends that, during the investigation concerning the incident, its management found other "confiscated items" in Mr. Stark's locker, "including Cargill-owned bolt cutters that had been missing for several months." (*Id.* at ¶ 11.) On March 13, 2009, Plaintiff discharged Mr. Stark, citing theft, cutting an employee's lock without management permission, and throwing away Cargill's property as the reasons for the decision. (*Id.* at ¶ 13.)

In accordance with the terms of the collective bargaining agreement between Plaintiff and Defendant, Defendant filed a grievance relating to Mr. Stark's termination. (*Id.* at ¶ 13.) The unresolved grievance was arbitrated before Arbitrator Paolucci on December 9, 2009. (*Id.* at ¶ 14.) In particular, the issue before the Arbitrator was whether Cargill had just cause to discharge Mr. Stark and whether Plaintiff violated the collective bargaining agreement between the parties when it discharged Mr. Stark. (*Id.*)

In the Opinion and Award, the Arbitrator sustained the grievance, finding that Plaintiff "failed to prove that [Mr. Stark] acted with intent to steal; and because what was proven amounted to a minor infraction that justified significantly less discipline than what was imposed." (ECF # 14, Ex. 4 at 14.). Concerning the policy against removing the locks without management approval and presence, the Arbitrator found that at some point the issue was discussed in a quarterly meeting. (*Id.* at 14-15.) Nevertheless, the Arbitrator found that the existence of any such policy was "only tangential to the question of what should occur when

2

lockers are abandoned." (*Id.* at 15.) The Opinion and Award states:

> [T]he evidence was not sufficient to create a reliable policy that automatically makes the disposal of presumed abandoned equipment dischargeable as a theft offense. The policy, as it was discussed, relied on the fact that those who remove locks from toolboxes, and the like, are probably intending to steal the items. Theft requires the necessary intent to steal. In this case, because there was no clear policy; because Hatton was a seasonal employee during the period in question; and because [Mr. Stark] was proven to believe that Hatton was seasonal; then it is fair to conclude that [Mr. Stark] acted not to steal, but to dispose of what he believed to be an abandoned locker.

(*Id.*) The Arbitrator noted that, although Mr. Stark's acts may constitute "a disciplinable event, it must be recognized as not as severe as theft – a claim involving the most serious acts of misconduct." (*Id.*)

Based upon the evidence, the Arbitrator concluded that a policy regarding the removal of locks was, at best, verbally discussed in the past. (*Id.*) In contrast, he found that disposing of what was thought to be abandoned property was an "informal, self-help permissive act," an accepted practice that occurred with regularity. (*Id.*)

The Arbitrator found that the "unwritten rules" concerning the disposal of property seemingly abandoned by seasonal employees did not extend to situations where personal property is involved, or where a lock must be removed. (*Id. at 16*) Here, where Mr. Stark found personal property after having broken a lock, the Arbitrator found that his conduct did not fall within the understood practice. (*Id.*) The Opinion and Award states that "[t]aking personal property of a co-worker, no matter how little in value, is something that the Company must be able to prevent, and was not proven to be within the accepted practice." (*Id.*) Therefore, the Arbitrator found that although it did not, in his mind, amount to theft, Mr. Stark's actions did commit a punishable offense. (*Id.* at 16-17.).

3

Upon determining that a punishable offense occurred, the Arbitrator, without any legal or factual basis decided that the punishment imposed by management was too severe and dictated that Mr. Stark's discipline must be reduced to a short suspension. (*Id.* at 17.) In addition, the Arbitrator determined that Mr. Stark must be made whole for all losses relating to his termination. (*Id.*) The Arbitrator, then went on to discuss a series of progressive disciplinary steps, that he created out of whole cloth and had no basis in the Collective Bargaining Agreement, or any stated policy of management. Based on this imaginary progressive discipline structure, the Arbitrator arbitrarily determined that Mr. Stark's acts were "sufficiently serious that a short suspension of five (5) days is justified. . . , " but that his suspension should be imposed with "the understanding that [it] is not the penultimate step in progressive discipline prior to discharge." (*Id.*)

It is well established that an arbitrator's decision "must draw its essence" from the collective bargaining agreement and "cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). That is, when an arbitrator fails to draw the essence of the decision from the collective bargaining agreement, courts reviewing the arbitration decision "have no choice but to refuse enforcement of the award." *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960). There can be no doubt in this case that the Arbitrator did not draw its essence from the collective bargaining agreement, but instead imposed his own personal standards of justice, overriding a perfectly appropriate and legally sustainable decision by management.

4

**II. DISCUSSION**

The provision of the collective bargaining agreement most pertinent to this Court's review of the Opinion and Award, entitled Management Rights, provides as follows:

> Section 8.1. – The right to manage the business, direct its working forces, and to maintain reasonable rules and regulations governing the operations of the plant and the conduct of employees is vested solely and exclusively in the Company. Subject to express terms of this Agreement, the Company will have the exclusive right . . . to proscribe and require employees to observe work rules and regulations including, but not limited to, safety rules, drug and alcohol policies, workplace violence policies and EEO policies, including sexual harassment policies, and the type of equipment to be used, and all other prerogatives and responsibilities normally inherent in management, provided the same are not prohibited by any of the specific terms of this Agreement.

(ECF # 14, Ex. 4 at 3.) Pursuant to this provision, Plaintiff has wide-ranging authority to maintain and enforce rules, both written and unwritten, pertaining to its employees. (*Id.*)

Based upon a thorough review of the entire record in this case, including, but not limited to, the provision set forth above, this Court finds that the Arbitrator's Opinion and Award does not draw its essence from the collective bargaining agreement, and in fact, is contrary to the terms of that agreement.

Here, the evidence demonstrated, and the Arbitrator found, that Mr. Stark cut the lock off of another employee's locker without consulting management in violation of an unwritten policy established by management.[1] The evidence demonstrated that the property was not abandoned,

---

[1] Under the terms of the collective bargaining agreement, the policy against removal of locks without management authorization and presence was not required to be written in order to be enforced. Despite this, the Arbitrator improperly found on his own terms that, in order to be recognized, any such policy "must be written, clear, and regularly enforced." (*Id.*) This determination is not drawn from the language of the collective bargaining agreement and its broad Management Rights provision.

5

and that its owner was still an employee of the company, Mr. Hatton, who, upon arriving for work, discovered that his lock had been cut and the contents of his locker had been removed. (ECF # 15, Ex. 1 at 31-32.) Mr. Hatton testified:

> That morning when I came in, I was walking into the locker room, approached my locker, realized that the lock was missing, which the lock was there the night before I left. When I opened up my locker all my gear and everything that was in there was gone. I went and found Seth Thomas who was my supervisor, brought him down to show him what was going on.
>
> At that point we realized that my belt, my hard hat and the self-rescuer were in the trash, [sic] showed Seth that everything was missing out of the locker. We then informed John Greuber that my locker was broken into and the stuff was missing. At that point when John Greuber came down, I opened up my locker and looked in. As you looked up and to the right, there's air vents that run through all the lockers, you could see one of my watches pressed up against [Scott Stark's] locker and mine.
>
> At that point his locker was unlocked so they opened it, saw that the watches were there in and then found my gloves that were in the bottom, and then they went on from there.

(*Id.*) Although the Arbitrator went to great lengths to produce a tortured interpretation of the evidence leading to his conclusion that Mr. Stark's actions did not amount to theft, the Court finds that such an interpretation defies common sense. (ECF # 14, Ex. 4 at 16 (finding the "failure to report does not make it theft").)

Theft is defined generally as the taking of personal property with intent to deprive the rightful owner of it. Here, the undisputed facts reflect that Mr. Stark cut Mr. Hatton's lock and took his personal property, including, but not limited to, two watches, thereafter placing them into his own locker. Mr. Stark cut the lock to gain access to the locker contents, he did not report that he had the items in his possession, nor did he turn in the items to management.

While the Arbitrator strained to find that Mr. Stark's acts, including his failure to report the discovery of personal property, did not amount to theft, this Court disagrees. When Mr. Stark cut the lock, took Mr. Hatton's personal property, and placed that property into his own locker, his actions amounted to theft. Indeed, Mr. Stark admitted that he took the watches intending to use them for his own personal benefit.[2] Thus, there can be no question that Mr. Stark unlawfully took Mr. Hatton's personal property with intent to deprive him of it.

The same holds true for the disposal of company property. There is no dispute that, after taking what he wanted for himself, Mr. Stark threw the remaining locker contents into the trash. In Mr. Stark's own words, he "discarded everything in the trash can." (*Id.* at 89.) The evidence reflects that Mr. Stark knew that the items that he threw away were company property belinging to Plaintiff. He could have easily reported them or turned them over to management, but instead he discarded them without authorization. Hence, he again took personal property with the intent to deprive the rightful owner of it, at best engaging in the destruction of company property, and at worst committing another instance of theft. Both common sense and the broad language contained in the collective bargaining agreement dictate that Plaintiff had the right to terminate an employee who committed theft, destroyed company property, and otherwise violated company policy.

Mr. Stark, although admitting to all of the relevant conduct outlined above, argued that he believed the property had been abandoned. The evidence, however, offers no reasonable basis for this belief or assumption. His testimony on this point is not supported by any corroborating

---

[2] Mr. Stark testified that he took the watches because he "could use the batteries." (ECF # 15, Ex. 1 at 87.) He likewise testified that the watches "still kept correct time," and that he kept them because he "thought [he] could use the watches on the Gator." (*Id.* at 87-88.)

evidence, and is a thinly disguised attempt to cover-up for his admitted indiscretions. Further, even if Mr. Stark had legitimately believed that the locker was abandoned, he did not have a right to unilaterally make this determination. More importantly, even if he believed that Mr. Hatton no longer worked at the company, he had absolutely no right to dispose of company property, or to confiscate Mr. Hatton's personal property and keep it for his own.

Even having taken such great pains to avoid labeling Mr. Stark's conduct as theft, which it clearly was, the Arbitrator found that Mr. Stark's conduct went beyond the accepted practice when he took personal property, and agreed that Mr. Stark should be subject to discipline. However, rather than allowing Plaintiff to impose discipline under the wide-ranging authority it maintained under the Management Rights provision of the collective bargaining agreement, the Arbitrator invalidated the company's perfectly valid decision to terminate Mr. Stark, and substituted his own judgment and preferred disciplinary structure instead.

In particular, the Arbitrator invented his own system of "progressive discipline," setting aside Plaintiff's determination that Mr. Stark should be discharged, and instead arbitrarily imposing a "short suspension of five (5) days. . . ." (*Id.* at 17.) Making his position even more arbitrary and capricious, the Arbitrator also added a random condition that the suspension should be imposed "with the understanding that this is not the penultimate step in progressive discipline prior to discharge." (*Id.*) The short suspension, and the related "understanding," are not drawn in any way from the language of the collective bargaining agreement, or any other policies articulated or practiced by management. To the contrary, they reflect nothing other than the Arbitrator's own personal notions of fairness, and his own sense of industrial justice.

8

This Court notes that the refusal to enforce an arbitration decision happens rarely, and it is not an occurrence which the Court takes lightly. Nevertheless, the Court is charged with determining whether the Arbitrator's decision draws its essence from the collective bargaining agreement. Because the Opinion and Award in this case is not drawn from the collective bargaining agreement, and is nothing more than an arbitrary determination based on the Arbitrator's own personal beliefs of what might be fair under the circumstances, the Court has no choice but to refuse enforcement of the Award. Under the broad Management Rights provision of the collective bargaining agreement, Plaintiff acted squarely within its authority by discharging Mr. Stark based upon his admitted conduct. As such, the Arbitrator's Opinion and Award is hereby VACATED.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Vacate the Arbitration Decision is GRANTED. This case is TERMINATED.

IT IS SO ORDERED.

    /s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:  January 4, 2011